HERMAN LAZERUS, Appellee, v. VICTOR SHAPIRO, Appellant.

No. 40489.

DECEMBER 9, 1930.

*Fred E. Egan* and *William P. Welch,* for appellant.

*Andrew J. Bell* and *L. H. Salinger,* for appellee.

EVANS, J.—The lease sued on was entered into on December 1, 1923. It purported to cover a term of three years from that date. The leased property consisted of the first story and basement of a store building, and the same was occupied by the de-

.fendant with a stock of goods in Missouri Valley. In March, 1925, this defendant sold his stock of goods to Goldstein, and surrendered possession thereof to such assignee. He executed a written bill of sale, and included therein the lease in question. Goldstein went into possession and paid the monthly rental until the first of December, 1925, on which date he moved out of the building by removing his stock therefrom. There is no controversy as to the amount of the unpaid rent under the lease. The contention in argument for the defendant is that the plaintiff consented to release the defendant and to look to Goldstein alone for the payment of his rent; that Goldstein agreed to assume the lease; and that the plaintiff agreed to accept him as his tenant, in lieu of the defendant.

We observe from the record that the defendant did not plead in terms that the plaintiff had released him or agreed to release him; nor did he plead in terms that Goldstein had assumed the lease, nor that the plaintiff had agreed to look to Goldstein alone for the payment of the rent. The answer does plead at great length certain evidentiary facts, from which alleged facts he draws his conclusion in argument that the plaintiff had released him from the obligations of the lease. It appears that the plaintiff was at all times a resident of Los Angeles, California; that he was represented by one Wilder, as local agent at Missouri Valley, who negotiated the lease with the defendant on behalf of the plaintiff. The evidence relied on by the defendant is the fact that he did sell his stock of goods to Goldstein, including his lease; that, pursuant thereto, Goldstein went into possession of the premises, and continued therein from March, 1925, to the first of December; that during that time he paid the rent monthly to Wilder; that Wilder knew, therefore, of the sale by Shapiro to Goldstein, and knew of the transfer of the lease; that, after Goldstein abandoned the premises, Wilder demanded or requested payment of the rent from him, which request was refused. The foregoing is the substance of the circumstances relied on by the defendant as evidence in support of his alleged release from the obligations of his contract. There is no claim that the plaintiff personally did any act which would operate as such release, nor any claim that Wilder had any authority to grant such release, unless such authority be implied from the fact that he was the agent of the plaintiff in making the lease. It is a significant

feature of the record that the defendant made no purported effort, at the time of his sale to Goldstein, to obtain from the plaintiff, or his agent, an actual consent to the transfer of the lease; nor did he make any request, written or oral, to the plaintiff or to his agent, that Goldstein be accepted in lieu of himself; nor did he request in any form that he be released from the obligations of the lease. His defense is, therefore, predicated upon the theory that the evidentiary facts here referred to worked his release as a matter of law. That he did not originally regard himself as released, is indicated by his own testimony. He testified that, subsequent to his transfer, he inquired of the plaintiff's agent whether Goldstein was paying the rent, and was assured that he was.

Goldstein did not in terms purport to assume the lease. The written bill of sale, including the assignment of lease, contained no provision of assumption by Goldstein. The bill of sale was never exhibited to plaintiff or his agent, nor were they consulted in advance to any degree concerning the transaction.

It is to be conceded that it is open to a tenant to prove his release and the acceptance of another tenant in lieu of himself; and that this may be done by circumstantial evidence, as well as by direct. But whether the proof be direct or circumstantial, it must, nevertheless, be sufficient to prove the fact of such release or substitution. The rule applicable in such a case is laid down as follows in *Keeley v. Beenblossom*, 183 Iowa 861, 863, cited in appellant's brief:

"It is true, of course, as argued by appellant, that the mere assignment of a lease has no effect to release the tenant from his contract obligation to pay the agreed rent to the end of his term. It may further be said that the mere fact that the landlord consents to the assignment, or thereafter receives rent from the assignee, will not, of itself, discharge the original lessee from such liability. If, however, the landlord expressedly or impliedly consents to treat the lease as having been surrendered or abandoned, and enters into a new or substituted lease with the assignee, the contract relation betwen the original parties is severed, and the obligation of the original lessee to pay rent ceases. Such surrender of the first lease and release of the first lessee may be implied from circumstances, even where the lease forbids an assignment without the lessor's written consent."

The foregoing is, of itself, quite destructive of the contention of the appellant herein.

The trial court found the evidence to be insufficient to support the purported defense. We are not only bound by such finding, as having the force and effect of a jury verdict, but we reach the same conclusion, upon an assumed *de novo* consideration of the record.

The judgment is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.